UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAROL CROSBY,

    Plaintiff,

v.                                      CASE No. 8:08-CV-2550-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

### I.

The plaintiff, who was fifty-two years old at the time of the administrative hearing and who has a tenth grade education, has worked as

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

a certified nursing assistant and a housekeeper (Tr. 58, 346). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to a bulging disc in her lower back and depression (Tr. 41, 57, 97). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has a severe impairment of degenerative disc disease of the lumbar spine (Tr. 16). The law judge concluded that the plaintiff's impairment restricted her to light work "with no climbing or working at unprotected heights and the ability to otherwise climb, balance, stoop, kneel, crouch and crawl on an occasional basis" (id.). The law judge determined that these restrictions did not prevent the plaintiff from returning to past work as a housekeeper (Tr. 19). Further, based upon the testimony of a vocational expert, the law judge ruled that there are other jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as cashier and fast food worker (id.). Accordingly, he decided that she was not disabled (id.). The Appeals Council

let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). The plaintiff must also show that she became disabled before her insured status expired on December 31, 2006, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar

requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

After a prior denial of disability benefits, the plaintiff filed new claims for benefits, alleging a disability onset date of June 17, 2003, which was the day after the previous administrative decision (Tr. 82). The law judge in this matter similarly concluded that the plaintiff was not disabled.

The plaintiff raises four specific issues in challenging the law judge's decision. The first three of the issues relate to the law judge's determination of the plaintiff's credibility with regard to her physical impairment. None warrants reversal.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

If the law judge determines that, under this test, the complaints of pain are not supported by the objectively determined medical condition, then the subjective complaints cannot be the basis for a finding of disability and the law judge need not assess the credibility of the complaints of pain. He must, however, provide an adequate explanation for the determination in order to permit, upon judicial review, an assessment whether the proper standard was applied and whether the finding is supported by substantial evidence. See, e.g., Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987); Johns v. Bowen, 821 F.2d 551, 556 (11th Cir. 1987).

If, on the other hand, the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985). In other words, this credibility finding must be adequately explained. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 16-17). He also set forth the governing principles (Tr. 16). This demonstrates that he applied the Eleventh Circuit pain standard. Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, consistent with this standard, the law judge acknowledged the plaintiff's specific complaints of debilitating pain (Tr. 18-19). Thus, the law judge summarized the plaintiff's testimony (Tr. 17). Then, he explained in detail why that testimony was not fully credible (Tr. 17-19).

The plaintiff bases her first challenge to the law judge's credibility determination on a purported conflict between two statements made by the law judge (Doc. 15, p. 7). The law judge made the following statement (Tr. 17):

> After considering the evidence of record, the undersigned Judge finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The plaintiff argues that this language is inconsistent with the law judge's conclusion that "[o]bjective findings show that the claimant's symptoms from degenerative disc disease are 'mild' with no correlation to support her allegations of pain and limitation to the degree reported" (Tr. 18), and with his finding that, "when the claimant underwent objective testing, the findings did not support the severity of her complaints" (id.).

This argument reflects a misunderstanding of the pain standard. The initial inquiry is the objective one concerning whether the plaintiff's severe impairment could be reasonably expected to give rise to the alleged pain. As indicated, if the answer is "no," the law judge does not even have

to evaluate the plaintiff's subjective complaints. However, if the impairment could reasonably give rise to the alleged pain, then the law judge must assess the credibility of the allegation.

Here, the law judge, at the first step of the inquiry, concluded that the impairment of the degenerative disc disease of the lumbar spine could reasonably give rise to disabling pain. He then proceeded to the next step of the analysis and determined that the plaintiff's allegations of pain were not entirely credible. Thus, the law judge properly carried out the analysis directed by the pain standard, and there is nothing inconsistent in his findings at the different steps of the analysis.

The plaintiff argues, second, that the law judge inaccurately stated that the medical evidence regarding her degenerative disc disease shows a mild impairment, and that MRI findings show otherwise (Doc. 15, pp. 7-8). This contention is meritless.

The law judge did not say that the plaintiff's back impairment was mild. To the contrary, the law judge concluded that the back condition was a severe impairment. What he said about the objective testing was the following (Tr. 17):

> EMG studies did not show evidence of degeneration and the MRI showed a small disk protrusion at L5-S1 and a mild bulge at L4-5; however, there was no definite evidence of nerve root compression or significant stenosis or fracture that could account for the level of symptoms and restrictions she alleges.

The law judge also stated (Tr. 18):

> EMG examination of the paraspinous in the lower extremities did not demonstrate any evidence of denervation. A myelogram and CT scan revealed mild ventral filling defect at C4-5 as well as multilevel degenerative disk disease and spondylosis that were characterized as "mild". No significant spinal stenosis was identified. Nerve conduction testing performed by Dr. Greenberg did not reveal any evidence for peripheral neuropathy.

The plaintiff makes no argument that this summary of the objective findings is not accurate. The plaintiff instead argues, in a conclusory manner, that "[i]t is believed that these kind [sic] of MRI findings are more than mild" (Doc. 15, p. 8). The plaintiff cites no evidence to support this assertion. Moreover, as the law judge notes (Tr. 17), Dr. Thomas C. Tolli, a treating physician, has said that "the findings on her studies are basically labeled as mild" (Tr. 215).

Furthermore, in order to establish reversible error, the plaintiff must show that she had functional limitations from her back impairment that were not included in the law judge's determination of the plaintiff's residual functional capacity. It is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). On this issue, the plaintiff has made no attempt to demonstrate that she had greater functional limitations than those found by the law judge.

In her third argument, the plaintiff attacks the law judge's credibility determination as describing inaccurately her need for assistance with daily activities. At the hearing, the plaintiff testified that she lives alone and that "nobody do[es] nothing for [her]" (Tr. 352). The plaintiff also stated that it hurts her to lift a jug of milk, that she can barely walk, that she cannot stand for more than fifteen to thirty minutes, and she experiences constant terrible pain (Tr. 351, 356). She testified further that she asks others for help when shopping for groceries (Tr. 356). The law judge was clearly troubled at the hearing by the plaintiff's inconsistencies regarding assistance (Tr. 355-56). Notably, the plaintiff stated in her memorandum that "[t]he testimony at

the hearing was very inconsistent as to what the claimant was able to do at her home" (Doc. 15, p. 8). The law judge was clearly entitled to conclude that these inconsistencies reflected adversely upon the plaintiff's credibility.

In addition, at the hearing, the plaintiff was asked to explain approximately $8,700 in earnings in 2005. The plaintiff's failed attempt to explain those earnings also "markedly compromised" the plaintiff's credibility (Tr. 18; see Tr. 346-50).

The law judge also identified several other factors that adversely affected the plaintiff's credibility, such as a lack of objective medical findings showing an incapacitating impairment (Tr. 18-19), an indication of exaggeration for secondary gain (Tr. 18), and the plaintiff's appearance and demeanor at the hearing (id.). In this case, the law judge had ample basis for concluding that the plaintiff was not entirely credible. And that is without considering the plaintiff's reported conviction for fraud (Tr. 218).

The plaintiff's final contention relates to her alleged mental impairment. She claims that the law judge failed to state adequate reasons for rejecting the opinion of treating psychiatrist, Linda Lefler, M.D. (Doc. 15, pp. 9-11).

Since 2001, the plaintiff has been treated for depression at Suncoast Center for Community Mental Health. The records indicate that she was seen by social workers, licensed mental health counselors, or nurse practitioners who found her usually to have moderate symptoms. Those individuals are not recognized as acceptable medical sources, and the law judge therefore could discount those opinions. See 20 C.F.R. 404.1513(a)(2), (d)(1); 416.913(a)(2), (d)(1).

However, on February 3, 2005, ARNP Elizabeth Grant seemingly filled out a Mental Assessment Questionnaire, apparently provided by plaintiff's counsel, which was signed by Dr. Lefler (Tr. 320-27). The plaintiff was given a poor prognosis due to long-term resistant depression and was assessed as having a number of mental limitations.

If Dr. Lefler is a treating doctor, the law judge is required to give substantial or considerable weight to her opinion, unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is

conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The plaintiff contends that the law judge's reasons for rejecting the opinion of Dr. Lefler are not supported by substantial evidence. The law judge explained his determination as follows (Tr. 18):

> The medical records from Suncoast Mental Health have also been considered, including the opinion that the claimant has depression with psychotic features (Exhibit 14F). It appears that the claimant's primary caregiver has been a social worker, not a psychiatrist[;] therefore, the opinions given cannot be accorded substantial weight. Additionally, the clinical picture painted by the Suncoast records is significantly different from that observed by other medical sources. Specifically, the claimant's presentation with Linda Appenfeldt, Ph.D.[,] suggested exaggeration for secondary gain. Dr. Appenfeldt noted that there was "an apparent mismatch between the claimant's stated [pain rating] score and the clinical presentation" as evidenced by the claimant's report of experiencing pain that she rated as 10/10. Likewise, the undersigned observed the claimant at the hearing, where she appeared to exaggerate the extent of her pain and limitations. The Suncoast records also suggest that the claimant's mental abilities and aptitudes are seriously limited and that in some instances she has no useful ability to function. However, no other medical source has had interaction with the claimant that would suggest such limitations.

These reasons are sufficient to provide good cause for discounting the questionnaire signed by Dr. Lefler.

Moreover, the law judge did not recognize Dr. Lefler as a treating doctor. There is a reasonable basis in the evidence for such a determination. Thus, except for the questionnaire, the record does not include any treatment notes or report of a psychological evaluation signed by Dr. Lefler. The plaintiff testified that she thought she saw Dr. Lefler a couple of times, but she mostly saw her social worker (Tr. 358). Having contact only twice with Dr. Lefler in the five and one-half years the plaintiff was going to the Suncoast Center does not warrant giving Dr. Lefler's signature on the questionnaire the weight normally accorded the opinion of a treating physician. See 20 C.F.R. 404.1527(d)(2), 416.927(d)(2). That is particularly so in light of the total lack of any treatment notes, evaluation report, or any other document signed by Dr. Lefler.

Furthermore, the questionnaire contained a serious mistake that would mislead Dr. Lefler if, as it appears, she simply signed the form that was filled out by an ARNP. The form stated the plaintiff's current GAF as 48, and said that the highest GAF in the past year was the same (Tr. 320). The GAF

scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (id.).[2]

It was incorrect to indicate that the plaintiff's highest GAF in the year preceding February 3, 2005, was 48. The records show, for example, a GAF of 56 on December 8, 2004 (Tr. 267); see also Tr. 268 ("54"), Tr. 274 ("54"), Tr. 280 ("52"), Tr. 283 ("56"). A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." DSM-IV-TR, p. 34. Thus, in the year preceding the

---

[2]The Commissioner has declined to endorse the use of GAF scores in disability determinations. Wind v. Barnhart, 133 Fed. Appx. 684, 690 n. 5 (11th Cir. 2005)(unpub. dec.). Moreover, a single GAF score does not provide solid evidence of a severe mental impairment. See DeBoard v. Commissioner of Social Security, 211 Fed. Appx. 411, 415 (6th Cir. 2006)(unpub. dec.).

questionnaire, the plaintiff, for the most part, scored in the middle of the range of moderate symptoms.

Consequently, assuming Dr. Lefler even read the form before she signed it, she was significantly misinformed that the plaintiff had been suffering from serious psychological symptoms for the past year. There is every reason to think that this misinformation would substantially affect her opinion regarding the plaintiff's mental functional limitations.

Of course, if Dr. Lefler filled out the form herself, then her mistake regarding the highest GAF for the prior year warrants discounting the questionnaire. In all events, therefore, the law judge was justified in declining to give the questionnaire substantial weight.

Finally, it is noted that the plaintiff limited this issue to an argument that the law judge erred in not giving significant weight to the opinion of Dr. Lefler (Doc. 15, pp. 9-11). The plaintiff, specifically, made no argument that the law judge erred in finding that the plaintiff's mental impairment was nonsevere. Accordingly, any such argument is deemed waived in light of the scheduling Order, which provided that "[t]he Plaintiff

must identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 11, p. 2).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 25th day of January, 2010.

*[signature]*
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE